**22-CR-00133**

_____

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**UNITED STATES OF AMERICA**

**vs.**

**ROBERT CALKINS JR.**

_____

**SENTENCING MEMORANDUM**

Dated: June 26, 2023

Submitted by:

James L. Riotto II, Esq.
The Law Office of James L. Riotto II
Attorneys for Defendant
30 West Broad Street, Suite 100
Rochester, NY 14614
(585) 546-4001

TO:    AUSA, David J. Rudroff

## I. INTRODUCTION

On February 9, 2023, Robert Calkins appeared before the Court and entered a plea of guilty to Production of Child Pornography, in violation of 18 U.S.C. §§ 2251.  Defense counsel submits this memorandum and requests the Court consider the information contained herein and submits the appropriate sentence is the mandatory minimum of fifteen (15) years.

The Sentencing Guidelines recommend a sentence between three hundred and sixty (360) months to life of imprisonment.  The defense submits Mr. Calkins meets the criteria of a sentence below the minimum guidelines based on: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the four primary purposes of sentencing, i.e., retribution, deterrence, incapacitation, and rehabilitation; (3) the kinds of sentences available (e.g., whether probation is prohibited or a mandatory minimum term of imprisonment is required by statute); (4) the sentencing range established through application of the sentencing guidelines and the types of sentences available under the guidelines; (5) any relevant "policy statements" promulgated by the Commission; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.

The Defendant understands the Court is not bound by the agreement and may impose a sentence outside of the advisory guidelines.  Nevertheless, he understands his charge comes with a statutory minimum term of fifteen (15) years of incarceration

The request for the minimum sentence is based upon the significant unique circumstances surrounding Robert's life, including, but not limited to, exceptional personal circumstances, and full acceptance of responsibility.  Mr. Calkins' post-conviction conduct, including his open and

honest disclosure during the course of the presentence investigation demonstrates his acceptance of responsibility and remorse.

## II. GENERAL SENTENCING AUTHORITY

The United States Supreme Court reaffirmed the importance of reserving sentencing discretion to federal district court judges in *United States v. Booker,* by holding that:

> [T]he federal sentencing statute . . . requires a sentencing court to consider Guideline ranges, but it permits the court to tailor the sentence in light of other statutory concerns as well, *see* § 3553(a) (Supp. 2004). *United States v. Booker*, 543 U.S. 220, 245-246 (2005).

District courts are required to accurately calculate the Guidelines sentence before considering the §3553(a) factors. *United States v. Dorvee*, 604 F.3d 84, 92 (2d Cir. 2010). Once the district court properly calculates the Guidelines, it may not presume that a Guidelines sentence is reasonable for any particular defendant, and accordingly, must conduct its own independent review of the §3553(a) sentencing factors. *Id.* at 93.

U.S.C. § 3553(a) directs the sentencing court to impose a sentence sufficient, but not greater than necessary to comply with the specific purposes of sentencing. These four purposes are:

 (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
 (2) to afford adequate deterrence to criminal conduct;
 (3) to protect the public from further crimes of the defendant; and
 (4) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In applying §3553(a) and its parsimony clause, the sentencing Court must look to the nature and circumstances of the offense and the history and characteristics of the defendant, the

need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and the Guidelines themselves. *Dorvee*, 604 F.3d at 93.

18 U.S.C. § 3661 directs that no limitation shall be placed on the information which the Court may receive and consider for the purpose of imposing an appropriate sentence.

The statutory construction of 18 U.S.C. § 3553(a) supports the interpretation that the primary factors for the Court's consideration are the nature and circumstances of the offense and the history and characteristics of the defendant.  Counsel recognizes the PSR provides the Court some information.  This Sentencing Statement is counsel's attempt to highlight for the Court the information regarding the defendant's history and characteristics, additional information about the circumstances of the offense, as well as information regarding the additional factors found in 18 U.S.C. § 3553(a).

The importance of individualized sentencing is a central theme in federal criminal law. "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in human failings that sometimes mitigate. . . the crime and punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113(1996).

Lastly, the Supreme Court has reminded the district courts that: "The sentencing judge...has greater familiarity with...the individual case and the individual defendant before him than the Commission or the appeals court. . . .  He is therefore in a superior position to find facts and judge their import under § [3553(a)] in each particular case." *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (internal quotations omitted).

### III. BACKGROUND

A.      **Nature and Circumstances of the Offense**

On February 9, 2023, Robert Calkins appeared before the Court and entered a plea of guilty to the information charging Production of Child Pornography, in violation of 18 U.S.C. §§ 2251.

Mr. Calkins acknowledges the seriousness of the offense and is deeply remorseful for his actions and recognizes he caused irreparable harm to others.  Counsel submits this information to not excuse Mr. Calkins' behavior but to shed light on the individual.  Why Robert committed this crime is a question which cannot be adequately answered.  However, it is important for the Court to know who Robert was before this incident, and who he strives to be in the future.

**B.      Childhood Abuse**

The Defendant was born on December 15, 1984 in Olean, NY to Robert Calkins Sr. and Holly Holtz.  He is one (1) of five (5) children born to their martial union; Crystal Wilson, Jessica Harman, Joshua Calkins, and Jeremiah Calkins.  Mr. Calkins does have two (2) paternal half-siblings, Cody and Aaron Calkins.  Robert's childhood was far from average, having been bounded back and forth between his mother and father for the majority of his childhood as they were separated for the greater part of his life.

"[A] lack of parental affection and support, or in more severe cases parental indifference, hostility or rejection, causes children to feel emotionally insecure and leads to poor personality development, thus encouraging antisocial or delinquent behavior."[1]  Another empirical study's findings show that "there are more offenders coming from unstable, violent, conflict-ridden, hostile, indifferent, non-cohesive families, than from stable, non-violent, conflict-free, cohesive families, and homes with interested and loving parents."[2]

---

1 Mwangangi, R. (2019) *The Role of Family in Dealing with Juvenile Delinquency*. Open Journal of Social Sciences, 7, 52-63. doi: 10.4236/jss.2019.73004.
2 Sarantakos, S. (1997) *Cohabitation, Marriage and Delinquency: The Significance of Family Environment*. The Australian and New Zealand Journal of Criminology, 30, 187-199. https://doi.org/10.1177/000486589703000205

Although growing up his household consisted of an environment with basic necessities, he faced tremendous emotional pain and hardship during his formative years.

**Mr. Calkins' and his sister Crystal, were victims of sexual abuse at the hands of their father.**

Robert's father, Robert E. Calkins Sr., has a history of abusing children.  As evidenced by the information provided to the probation department, the Defendant and his sister were sexually abused by his father at a young age.  These are not conjectured or speculative accusations, they are documented facts.  The abuse lasted into the teenage years for the kids.  Crystal reported the last time she was abused by her father was in 2005 when she was 15.  However, even after she was able to leave the residence, Robert's father continued to abuse other children.

Not surprisingly, much of the abuse committed to Robert and his sister went unreported.  Remember, during this time, Robert's mother left the family home meaning there was no one protecting the children.  This was the life they knew and it became the norm.

Research evidence showing that it is not rare for people who were sexually abused in childhood to go for many years, even decades, without having (recognizable or explicit) memories of the abuse.[3]  Further, recent research indicates that male victims are less likely to disclose their abuse and take longer to do so which is why Mr. Calkins never reported the incident to law enforcement or his family.[4]

Childhood sexual abuse has been correlated with higher levels of depression, guilt, shame, self-blame, eating disorders, somatic concerns, anxiety, dissociative patterns, repression, denial, sexual problems, and relationship problems.[5]  More recently, other studies have indicated

---

3 https://jimhopper.com/topics/child-abuse/recovered-memories-of-sexual-abuse/
4 https://aifs.gov.au/cfca/publications/long-term-effects-child-sexual-abuse
5 https://www.counseling.org/docs/disaster-and-trauma_sexual-abuse/long-term-effects-of-childhood-sexual-abuse.pdf?sfvrsn=2

that child sexual abusers are much more likely to have been sexually victimized as children; this is commonly referred to as the Victim-to-Perpetrator Cycle.[6]

Further, childhood abuse is positively related to adult depression, aggression, hostility, anger, fear, anxiety disorders, and personality disorders.[7]  In relevant part, Mr. Calkins did not finish high school, or his vocational program, despite excelling in his welding skills.  It is reported that, after an altercation with another student, Mr. Roberts' was expelled from BOCES and chose not to return.  This is directly related to the childhood abuse he endured by the hands of his father.

The PSR outlines the history of child abuse committed on the Defendant by his father and counsel submits a downward departure is warranted based on extreme childhood abuse because these circumstances are not adequately considered making a departure appropriate under § 5K2.0.  *See, US v. Rivera*, 192 F.3d 81 (2d Cir 1999); *US v. Lara*, 905 F.2d 599 (2d Cir 1990).

This case involves a Defendant who was sexually abused as a child and has now been accused of becoming an abuser.  It is important to approach this matter with sensitivity and understanding, recognizing the complex dynamics.

Childhood sexual abuse is a traumatic experience which causes a profound and long-lasting effect on an individual's mental, emotional, and social well-being.  As noted above, survivors of such abuse may face significant challenges in their personal relationships and struggle with their own psychological and emotional healing. It is crucial to acknowledge that being a victim of abuse does not excuse or justify any subsequent harmful behaviors.

While it is distressing to consider the possibility of a survivor becoming an abuser, it is essential to approach this situation with an understanding of the factors involved. Research

---

6 https://www.inspq.qc.ca/en/sexual-assault/fact-sheets/sexual-abuse-childhood-perpetrators#ref
7 Browne A, Finkelhor D. Impact of child sexual abuse: a review of the research. *Psychol Bull.* 1986;99:66–77

indicates the cycle of abuse is not inevitable for all survivors; however, it is a reality for some individuals. Factors such as untreated trauma, lack of appropriate support systems, and limited access to therapeutic resources may contribute to this outcome.

It is imperative the legal system takes a balanced and fair approach to cases involving survivors who become abusers.  This includes providing opportunities for the Defendant to receive comprehensive mental health assessments, trauma-informed care, and appropriate counseling or therapy.  It is vital to recognize the complex interplay of trauma, personal responsibility, and the need for accountability while striving for a just resolution that protects the rights and safety of all involved.

The Introduction to the Guidelines states:

The sentencing statute permits a court to depart from a guideline-specified sentence only when it finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.  *U.S. Sentencing Guidelines Manual* ch. 1, pt. A introductory cmt.4(b)

Congress preserved for district judges the discretion to sentence outside the applicable guideline range if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that" prescribed by the guidelines. 18 USC 3553(h); *see also U.S. Sentencing Guidelines Manual* § 5K2.0; *Koon v. United States,* 518 U.S. 81, 92 (1996)

Counsel submits, the totality of emotional pain at the hands of the Defendant's father undoubtedly played a role in the person he became and choices he made throughout the course of his life and warrants a non-guideline sentence.

**C.    Family Support**

Despite his unfortunate up bring, Mr. Calkins has been in a relationship with Ms. Katelyn Jimmerson since 2020 and she remains supportive throughout the proceeding.  One (1) child was born to their union, eight (8) month old Zala Calkins, who resides with Ms. Jimmerson.  He also shares a daughter with his ex-wife, Ms. Danielle Calkins, along with a son born to Amanda Wilder who was placed into adopt proceedings.

Mr. Calkins' understands his actions caused irreparable harm to those around him; especially to his family.  He will miss the opportunities of raising his children and will not be present as they reach individual milestones for the foreseeable future.  It is impossible to predict exactly how Robert's children will be affected by a prison sentence.  However, it is reasonable to assume the outcome for the children will be adverse.

"Children of incarcerated parents are more likely to experience financial hardship, residential instability, and changes in caregiver arrangements, and trauma associated with the loss of a loved one, all of which may translate into short- and long-term mental and physical health issues, poor academic performance and achievement, substance abuse, and delinquency."[8] Moreover, as the Court is well aware, the perpetuation of criminal behavior to subsequent generations often begins with the reappearance of adverse conditions for an inmate's children, similar to those experienced by the inmate in childhood.[9]

---

8 Akiva M. Liberman & Jocelyn Fontaine, Urban Institute, Reducing Harms to Boys and Young Men of Colorfrom Criminal Justice System Involvement 10 (Feb. 2015), http://www.urban.org/sites/default/files/alfresco/publication-pdfs/2000095-Reducing-Harmsto-Boys-and-Young-Men-of-Color-from-Criminal-Justice-System-Involvement.pdf.
9 See Joan McCord, The Cycle of Crime and Socialization Practices, 82 J. Crim. L.  Criminology 211 (1991-1992).

Robert is very fortunate to have a strong support system within his family, many of whom offered to take Robert in; offering employment, shelter, counseling and companionship. He acknowledges his actions caused irreparable harm to his family and friends impacted by this offense. Mr. Calkins understands the importance of continuing an honest lifestyle, and is surrounded by people who are willing to help him maintain this commitment.

**D.     Dual Prosecution by State and Federal Authorities**

For reasons only known to the Cattaraugus County District Attorney's Office, Robert is subject to dual prosecution by state and federal authorities for the same conduct. Mr. Calkins voluntarily entered a plea to Promoting a Sexual Performance of a Child in Cattaraugus County Court. He is scheduled for sentencing on this related case on July 11, 2023 and faces a term of state incarceration, payment of a fine, Court Surcharge, a Crime Assistance Fees, a DNA databank fee, a Sex Offender Registration Fee, and Supplemental Sex Offender Victim Fee totaling a minimum of $1,000.

Here, Mr. Calkins is facing a minimum term of incarceration of fifteen (15) years. Counsel requests the Court to consider the disparity between federal and state sentences in similar cases and impose a sentence to run concurrent to the state-imposed sentence.

The burden of dual prosecution by state and federal authorities can be a basis for the Court to consider when determining the appropriate sentence. *See, e.g., Koon v US*, 518 US 81, at 113-114 (1996).

**E.     Cooperation with Law Enforcement**

When Mr. Calkins was originally confronted by Law Enforcement regarding their investigation, he immediately cooperated.   Robert was neither hostile, nor was he dishonest to the Officers. He did not once attempt to neither distort the truth nor minimize his involvement.

Mr. Calkins undoubtedly established acceptance of responsibly by fully accepting responsibility for his actions as demonstrated to the Court during the change of plea hearing.

**F.    Robert is Not a Threat to Society – Cost of Incarceration**

Robert recognizes the harm his actions caused and is making efforts to become a better, more law-abiding individual.  In 2020, a typical Federal Prison spent more than $120 to incarcerate a single person for a single night, or more than $39,158 per year.  In fact, jail budgets have grown even as the number of people in jail has gone down.  All monetary costs for individuals incarcerated come directly from funding which could be used to help service building communities.[10]

In light of the foregoing, counsel submits a departure from the Sentencing Guidelines is warranted and the guidelines as calculated are excessive and be overly punitive.

### IV. SENTENCING FACTORS

**A.    Need for Just Punishment in Light of the Seriousness of the Offense, 18 U.S.C. § 3553(a)(2)(A)**

In determining an appropriate sentence, this Court must consider the sentences available by statute.  *See* 18 U.S.C. § 3553(a)(3).  Congress set the statutory range of imprisonment for Mr. Calkins' offense of three hundred and sixty (360) to life imprisonment.  *See* 18 U.S.C. § 224(b)(2)

As many courts have observed, by enhancing sentences based upon factors that are inherent in the crime and thus appear in nearly every case, offenders are concentrated at or near the statutory maximum and thus fails to meaningfully distinguish more serious offenders from

---

10 Annual Determination of Average Cost of Incarceration Fee, National Archives, https://www.federalregister.gov/documents/2021/09/01/2021-18800/annual-determination-of-average-cost-of-incarceration-fee-coif#:~:text=Based%20on%20FY%202020%20data,%2435%2C663%20(%2497.44%20per%20day)

less serious offenders.  Sentences at or near the statutory maximum should be reserved for the "worst possible variation of the crime" committed by the most dangerous offender.

Congress' actions with respect to the child pornography guideline have stemmed in large part from the belief that those who view child pornography are actually child molesters.  Under this view, punishing child pornography possessors serves as a proxy for punishing child sexual abusers.  Another primary justification for severely punishing child pornography possessors is that they support the market for child pornography and thus encourage the abuse of more children in order to create new images.  *See* 136 Cong. Rec. S4730 (Apr. 20, 1990).  Aside from the evidence that disproves this belief in general, Mr. White did not pay for any images.

Many courts have observed, the child pornography guideline, by enhancing sentences based upon factors that are inherent in the crime and thus appear in nearly every case, concentrates offenders at or near the statutory maximum and thus fails to meaningfully distinguish more serious offenders from less serious offenders.  *United States v. Dorvee*, 616 F.3d 174, 187 (2d Cir. 2010).

Mr. Calkins' conduct and characteristics could not be farther from these enhancement goals.  He admitted what he had done when questioned by law enforcement, and he has fully accepted responsibility for his offense.  Mr. Calkins' is a victim of sexual child abuse as a child and is the offender for whom the *minimum* statutorily authorized punishment is reserved.

One of the goals of the SRA was to provide for proportionality in punishment among offenses of different seriousness.  S. Rep. No. 98-225, at 45-46 (1983).  The child pornography guideline fails that goal, as several courts have noted.  *See, e.g.*, *United States v. Dorvee*, 616 F.3d 174, 187 (2010).

A defendant who used a computer to entice a 12- year-old to engage in illegal sexual activity, but was caught before actually having sex with the child, would receive an offense level of 24, *see* § 2G1.3(a)(3), (b)(3), eight-teen levels *below* Mr. Calkins' offense level under § 2G2.2.  In order to receive an offense level of 42, as Mr. Calkins' did for producing child pornography, one could, for example, attempt to commit first degree murder, *see* § 2A2.1(a)(1); commit rape resulting in more than serious but less than permanent bodily injury, *see* § 2A3.1(a)(2), (b)(4); hold a person in involuntary servitude for over a year by use of a weapon and cause permanent bodily injury, *see* § 2H4.1(a)(1), (b)(1), (b)(2), and (b)(3); or rob a bank of $800,000, while brandishing a weapon and causing bodily injury, *see* § 2B3.1(a), (b)(1), (b)(2), (b)(7).

Mr. Calkins' recognizes the great harm inflicted on the victims depicted in these images and is deeply remorseful of his actions.

**B.     Need for Adequate Deterrence, 18 U.S.C. § 3553(a)(2)(b)**

The empirical evidence is unanimous that there is no relationship between sentence length and general or specific deterrence, regardless of the type of crime. *See* Andrew von Hirsch *et al.*, *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999) (concluding that "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance," and that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects"); Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-29 (2006) ("[I]ncreases in severity of punishments do not yield significant (if any) marginal deterrent effects. . . . Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the

evidence."); David Weisburd *et al*., *Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes*, 33 Criminology 587 (1995) (finding no difference in deterrence for white collar offenders between probation and imprisonment); Donald P. Green & Daniel Winik, *Using Random Judge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism among Drug Offenders*, 48 Criminology 357 (2010) (study of over a thousand offenders whose sentences varied substantially in prison time and probation found that such variations "have no detectable effect on rates of re-arrest," and that "[t]hose assigned by chance to receive prison time and their counterparts who received no prison time were re-arrested at similar rates over a four-year time frame").

The Sentencing Commission has found "[t]here is no correlation between recidivism and guidelines' offense level. . . . While surprising at first glance, this finding should be expected. The guidelines' offense level is not intended or designed to predict recidivism."  U.S. Sent'g Comm'n, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 15 (2004) ["U.S. Sent'g Comm'n, *Measuring Recidivism*"].  And according to "the best available evidence, . . . prisons do not reduce recidivism more than noncustodial sanctions."  Francis T. Cullen *et al., Prisons Do Not Reduce Recidivism:  The High Cost of Ignoring Science*, 91 Prison J. 48S, 50S-51S (2011).

Nor does lengthy imprisonment of child pornography possessors have any deterrent or preventive effect on the production or dissemination of child pornography.  This is in part because the production and dissemination of child pornography is a widespread, international problem.  There is no evidence "remotely supporting the notion that harsher punishment would reduce the flow of child pornography on the Internet."  *US v. Beiermann*, 599 F. Supp. 2d 1087, 1103 ("[W]e cannot sentence Internet users and sharers of child pornography fast enough or long

enough to make a dent in the availability of such material on the Internet," and while deterrence is a "laudable" goal, it "is not being achieved according to any empirical or other evidence in this case or, for that matter, empirical evidence in any other case or source that I am aware of.").

In short, Mr. Calkins' strong family support, in conjunction with his determination to be a better person, strongly supports the conclusion he is most likely to not re-offend. All of the evidence indicates that the use of supervised release with appropriate conditions is more than sufficient.

**C.     The Sentencing Commission's 2012 Report to Congress recommended comprehensive revision of U.S.S.G. 2G2.2**

In 2012, the Sentencing Commission asked Congress to carry out a comprehensive review of the standards for child pornography. United States Sentencing Commission, *Federal Child Pornography Offenses* at 322 (Dec. 2012). The Commission clarified from 2004 (83.2%) to 2011 (32.7%) the level of sentences within the Guidelines decreased. *Id*. By 2011, 62.8 percent of sentences in non-production cases were below-Guidelines-range sentences. *Id*. The Commission decided from this data "a growing number of courts believe the current sentencing scheme in non-production offenses is overly severe for some offenders." *Id*. Additionally, the Commission acknowledged most federal criminal justice participants believe the standards for child pornography are obsolete and think they "are left without a meaningful baseline from which they can apply sentencing principles" in non-production cases. *Id*.

The Commission explained that as a result of the enhancements of computers and Internet technologies, the existing guideline no longer distinguishes offenders based on their degree of culpability. With the growth of technologies, the typical offender's collection has grown in volume and variety which are now readily available on the Internet. *Id*. Conclusively

leading the enhancements pertaining to computer usage, type and volume of images applicable to most offenders which consequently fail to differentiate among offenders in terms of their liability.

   **D.      U.S.S.G. § 2G2.2 Is Fundamentally Different from Most Other Guidelines and Must be Applied With Great Care**

   Federal Courts in the Western District of New York, recognized the struggle sentencing judges encounter when considering the guideline range in these types of cases.  The Honorable David J. Larimer identified these specific guidelines (§ 2G2.2) often involve and result in significantly high sentences almost always for first offenders.  *See, United States v. Grover*, 09-cr-6089, Sentencing Transcript at 19 (W.D.N.Y. Sept. 25, 2009), [hereinafter Grover].

   These challenges were similarly addressed in *Dorvee*, 604 F.3d at 94.  That panel acknowledged the § 2G2.2 guideline is fundamentally different from most and that, unless applied with great care, can lead to unreasonable sentences that are inconsistent with what § 3553 requires.  *Id.*

   The WDNY and the panel in *Dorvee*, agree the § 2G2.2 guidelines are not based on empirical data derived from past sentencing practices.  Rather, that guideline section was amended several times at Congress' direction recommending harsher penalties.  *See, Grover* at 20 and *Dorvee*, 604 F.3d at 95.

   Here, the PSR calculates the guideline range beginning with a base offense level of 32. Three separate specific offense characteristics are applied for material involving a minor under 12 years old (+4); sexual contact (+2); and legal guardian on minor (+2).  These enhancements result in an adjusted offense level (including the 3-level reduction for acceptance) of 42.  The

intersecting range for an offense level of 42 and a criminal history category III is 360 months to life.

Moreover, all of the purposes of sentencing point in the same direction. Robert's offense is less serious than the offenses Congress had in mind, and he is not the dangerous offender Congress envisioned. Incarceration is not necessary to protect the public, and would be a particularly harsh punishment for Robert. It is highly unlikely he could be adequately treated in prison, and he is unable to protect himself against any violence that might befall him.

The Court should recognize that every child pornography case presented to it includes prepubescent children and sadistic or masochistic activity. Similarly, the increase in the number of images also raises the guidelines notwithstanding the lack of any empirical data to support the ratio (one video equals seventy-five images). Often times, these enhancements lead to a guideline range which is excessive and greater than necessary to accomplish the purposes of § 3553(a). Grover at 21 and 22. **

The irrationality in the application of the § 2G2.2 guidelines to the instant case is clear. A thirty-nine (39) year old with no prior instances of sexual contact or "acting" out with children. Counsel submits the recommended advisory sentence range is disproportionate to the sentencing factors present in Roberts' matter. The recommended range is inconsistent with the directions of 18 U.S.C. § 3553 which requires Your Honor to impose a sentence sufficient, but not greater than necessary.

**E.       Need for Medical Care and Correctional Treatment in the Most Effective Manner, 18 U.S.C. § 3553(a)(2)(D)**

Mr. Calkins has been diagnosed with a variant of skin cancer and is currently undergoing treatment. As a consequence of this condition, he developed visible cysts, bumps and his face is

significantly disfigured.  Mr. Calkins' medical treatment requires an ongoing basis.  His health problems are unlikely to be even adequately treated in in prison, much less in the most effective manner. However, counsel requests the Court consider the defendant's current medical conditions and the fact the defendant may emerge in substantially worse shape than he is presently, if he does not die before completing his sentence.

## V. REQUESTED SENTENCE

Based on the history and characteristics of the Defendant, it is respectfully submitted that the appropriate sentence is the mandatory minimum of fifteen (15) years.  Further, Mr. Calkins' has been incarcerated during the duration of his case. He simply will not have the financial resources to afford a substantial fine and as such, it is respectfully requested that the Court impose no fine.

Additionally, pursuant to 18 U.S.C. § 3014, it is understood Mr. Calkins can be subject to owe a $5,000 special assessment fee.  However, counsel submits Mr. Calkins is indigent as he has been incarcerated, has no employment or income and will be incarcerated.  Therefore, it is respectfully requested the Court deem Mr. Calkins indigent as he does not have the funds to afford this on top of the fines and surcharges that are yet to come from him state case.

## **CONCLUSION**

Counsel understands the Court will factor Mr. Calkins' background, history, and life circumstances into its calculation of an appropriate sentence pursuant to 18 U.S.C. § 3553(a). *See United States v. Cavera*, 550 F.3d 180 (2d Cir. 2008) (Policy considerations different than those reached by the Sentencing Commission are proper 18 U.S.C. § 3553(a) considerations for a Sentencing Court).  Mr. Calkins is genuinely remorseful and understands the seriousness of the offense.

It is respectfully requested that the Court consider the history and characteristics of the Defendant, the nature and circumstances of the offense, the human failings that sometimes mitigate the crime and punishment, and the overly-punitive consequences of a longer period of incarceration.  Defendant respectfully requests that the Court impose the requested sentence contained herein and grant any other relief as the court deems necessary and proper.

June 26, 2023
Rochester, New York

By:   /s James L. Riotto II
James L. Riotto II, Esq.
The Law Office of James L. Riotto
*Attorneys for Defendant*
30 West Broad Street
Suite 100
Rochester, NY 14614
(585) 546-4001
jriotto@riottolaw.com

cc: AUSA, David J. Rudroff